E-Filed 9/30/15

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN FURTADO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No.  13-cv-04063-HRL<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF AND DENYING SUMMARY JUDGMENT FOR DEFENDANT**<br><br>Re: Dkt. Nos. 15, 18 |

Plaintiff Kathleen Furtado appeals from the Social Security Administration's ("SSA") denial of her application for social security disability benefits under Title II of the Social Security Act. Ms. Furtado alleged in her application that she became unable to work on October 25, 2005, due to the combined effects of fibromyalgia, osteoarthritis, chronic depression, obesity, and other illnesses. The SSA accepted an administrative law judge's ("ALJ") conclusion that Ms. Furtado retains the ability to perform her old job as well as the ability to work as a secretary or receptionist. The parties filed cross-motions for summary judgment and consented to magistrate jurisdiction. Ms. Furtado requests an order that awards disability benefits to her or else instructs the SSA on how to conduct further proceedings in her case; the SSA requests an order that affirms the denial of Ms. Furtado's application. The court has carefully reviewed the record and the applicable law. Ms. Furtado's motion for summary judgment is granted and SSA's motion for summary judgment is denied.

## BACKGROUND

Ms. Furtado was born on November 9, 1954. She completed high school and has some college education. Dkt. No. 14-3 at 76. Ms. Furtado worked as a process engineer from 1977 to 1993: she researched, procured, and oversaw the installation of equipment used to create silicon wafers and thin cathode ray tubes. Dkt. No. 14-7 at 12; Dkt. No. 14-3 at 77. Ms. Furtado trained

1    other engineers for two years and then held managerial positions starting in 1995. Dkt. No. 14-7
2    at 12; Dkt. No. 14-3 at 79. Ms. Furtado was diagnosed with fibromyalgia in June 2005—chronic
3    widespread pain along with additional, severe pain triggered when pressure is applied to her body.
4    Dkt. No. 14-9 at 149; Dkt. No. 14-3 at 82-83. She was concurrently diagnosed with major
5    depression, chronic osteoarthritis, and morbid obesity. Dkt. No. 14-9 at 149. Ms. Furtado recalls
6    that she always had outstanding performance reviews, but that her declining health made it "very
7    hard" to work by August 2005. Dkt. No. 14-3 at 81. Ms. Furtado was laid off on October 25,
8    2005. Dkt. No. 14-3 at 79.

9        Ms. Furtado continued to see her doctors and tried to improve her health. She applied for
10   bariatric surgery, but first she needed to lose more than ten percent of her body weight with diet
11   and exercise. Dkt. No. 14-3 at 87-88. In September of 2006 Ms. Furtado began dialectical
12   behavioral therapy—a treatment that helps patients to alter undesirable behavior—with licensed
13   social worker Bertram Barth. She expressed a "particular interest in regulating her eating" during
14   the first group session. Dkt. No. 14-9 at 134. And Mr. Barth noted on July 31, 2007 that Ms.
15   Furtado had "joined some specific activities for weight [management.]" Dkt. No. 14-9 at 73. But
16   immobility, severe pain, and depression frustrated Ms. Furtado's diet-and-exercise efforts. She
17   could not "walk very far" or for "very long." Dkt. No. 14-3 at 88. She used to exercise in a pool
18   when she had a job, but she could no longer afford pool access. *Id.* Ms. Furtado also struggled
19   with the urge to overeat as a coping response to her depression, her daily problems, and her
20   chronic pain. *Id.* at 93-94. Ms. Furtado was not able to lose weight and she did not receive
21   bariatric surgery. *Id.* at 87.

22       Ms. Furtado applied for disability benefits in August of 2010—she says that she applied a
23   few years after her health deteriorated because she "loved working" and she had thought she
24   would be able to "get better[.]" *Id.* at 83. The SSA denied Ms. Furtado's initial application as
25   well as her application for reconsideration of that denial. Ms. Furtado requested and received a
26   hearing with an Administrative Law Judge ("ALJ"), but he also denied her application for
27   benefits. Ms. Furtado filed more evidence about her depression and asked SSA's Appeals Council
28   to review whether the expanded record still supported the ALJ's decision; the Appeals Council

United States District Court
Northern District of California

added the new evidence to the record, but declined to review the ALJ's decision. Ms. Furtado timely filed her appeal to this court in September of 2013.

## STANDARD OF REVIEW

This court has jurisdiction to hear an appeal from a final denial of social security disability benefits, 42 USC § 405(g), and to overturn that denial when the decision is based on a legal error or is not based on substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). An ALJ's denial becomes SSA's final decision when SSA's Appeals Council denies a request to review the ALJ's denial. *See, e.g., Gillett-Netting v. Barnhart*, 371 F.3d 593, 595 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, *supra*.

## DISCUSSION

Reasonable regulations, when consistent with the laws that authorize them and adopted through proper procedures, have the force of law. *Watson Land Co. v. Commissioner*, 799 F.2d 571, 579 (9th Cir. 1986). Federal courts generally defer to an agency's reasonable interpretations of its own statutes and regulations. *Id.* But federal courts do not need to defer when the interpretation comes from a policy statement, agency manual, or enforcement guideline. *Community Hospital of the Monterey Peninsula v. Thompson*, 323 F.3d 782, 791 (9th Cir. 2003). Still, a non-controlling interpretation provides proper guidance to the extent that it is thorough, logical, persuasive, and consistent with related interpretations. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

SSA's regulations establish a five-step gauntlet that determines whether a claimant qualifies for disability payments. The claimant disqualifies at step one if she engages in substantial gainful activity. She disqualifies at step two if no significant medical issues impair her ability to work. The claimant qualifies at step three if she possesses a sufficiently severe impairment or if other long-term impairments "equal" a sufficient impairment. Otherwise, she disqualifies at step four if her impairments do not prevent her from doing work she has done in the past. Finally, the claimant qualifies at step five if her impairments prevent her from doing other

3

1  work. At step five the burden of proof shifts from the claimant to the government. *Celaya v.*
2  *Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). The claimant must establish her disability began
3  before her date last insured—December 31, 2009 for Ms. Furtado. 20 CFR § 404.131; Dkt. No.
4  14-3 at 18.

5  Obesity does not necessarily establish disability. However, obesity "is a risk factor that
6  increases . . . chances of developing impairments in most body systems." SSR 02-1P. The effects
7  of all medical impairments—including obesity—must be considered together to determine
8  whether the claimant qualifies for disability. 20 CFR § 404.1523; *Celaya*, 332 F.3d at 1181-82.
9  Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular,
10  respiratory, and musculoskeletal body systems." *Id.* Obesity increases the risk of osteoarthritis
11  and it "may cause or contribute to" depression. *Id.*

12  A district court should credit evidence on appeal if the ALJ rejected the evidence without a
13  legally sufficient justification. *Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004). The
14  opinion of a physician who treats the claimant, in general, receives more weight than the opinion
15  of a non-treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating
16  physician's opinion, when substantially contradicted by another doctor, may be rejected only if the
17  ALJ provides "specific and legitimate reasons" for the rejection and those reasons are "supported
18  by substantial evidence[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,
19  1298-99 (9th Cir. 1999). And an ALJ may not discredit the claimant's testimony about the
20  severity of her symptoms solely because the claimant carries out a limited set of occasional
21  activities with difficulty. *Benecke*, 379 F.3d at 594. Instead, the ALJ must specifically discuss
22  "why reported daily activity limitations . . . are not reasonably consistent with the . . . other
23  evidence." *See* SSR 95-5P. A district court should remand for an immediate award of benefits if:
24  (1) the ALJ failed to justify the rejection of some evidence, (2) no outstanding issues must be
25  resolved before a determination of disability can be made, and (3) it is clear from the record that
26  the ALJ would be required to find the claimant disabled if the rejected evidence were credited.
27  *Benecke*, 389 F.3d at 593.

28  Ms. Furtado argues that the SSA and the ALJ committed four errors: (1) the SSA failed to

4

discuss the supplemental evidence added to the record after the ALJ issued his denial; (2) the ALJ failed to analyze the impairment caused by Ms. Furtado's obesity; (3) the ALJ failed to ask whether, hypothetically, the symptoms described by Ms. Furtado would prevent someone from working; and (4) the ALJ discredited Ms. Furtado's testimony without a valid justification.  The SSA responds that: (1) no obligation to consider supplemental evidence exists; (2) the ALJ's decision is supported by substantial evidence; (3) the ALJ had no burden to ask any hypothetical questions because Ms. Furtado lost at step four, before the burden of proof could shift to the ALJ; and (4) substantial evidence supported the ALJ's decision to discredit Ms. Furtado's testimony. But analysis of these dueling arguments reveals that the court faces one overarching question: does the expanded record—with credit given to any improperly discredited evidence—show that the ALJ made a decision free of legal error and supported by substantial evidence?

The SSA's Appeals Council has no obligation to consider supplemental evidence. *Taylor v. Comm'r*, 659 F.3d 1228, 1231 (9th Cir. 2011).  This court lacks jurisdiction to review whether the Appeals Council should have granted a request for a review of an ALJ's decision. *Id.*  The court should not, as Ms. Furtado asks, automatically credit the supplemental evidence the Appeals Council declined to review.  Instead, the court should analyze the expanded record to determine whether the ALJ's decision—which the SSA adopted as its own final decision—is free of legal error and supported by substantial evidence. *Id.* at 1232.

The ALJ did not fail to consider the cumulative effect of obesity on Ms. Furtado's total level of impairment.  In fact, the ALJ explicitly considered the effects of obesity on Ms. Furtado's "functional limitations"; he simply found that those limitations were, altogether, not severe. Dkt. No. 14-3 at 18-22.  But this leaves open the overarching question of whether the ALJ's denial of benefits was free of legal error and supported by substantial evidence.

The ALJ, generally, has no evidentiary burden to carry unless the claimant carries her burden at the fourth step of the ALJ's five-step analysis. *Celaya*, 332 F.3d at 1180.  But here the ALJ disqualified Ms. Furtado at the fourth step and then attempted—"[i]n the alternative"— to also carry his own burden at the fifth step. Dkt. No. 14-3 at 23.  Even still, the ALJ does not have a particular duty to ask particular hypothetical questions.  Rather, the ALJ is prohibited from

basing a final decision solely on hypothetical answers that are not independently supported by substantial evidence. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (reversing an ALJ's final decision for lack of "substantial evidence" when hypothetical questions and answers provided the only support for the decision). Each alleged error, then, leads back to the same key question: does the expanded record provide substantial evidence to support the denial of benefits after any improperly rejected evidence is credited as true?

The ALJ discredited Ms. Furtado's testimony about the "intensity, persistence and limiting effects of [her]" symptoms as inconsistent with the following activities:

> [S]he was laid off her last job; she drives; and she grocery shops. She reported in a function report that she prepares her own meals; she does laundry; she cleans the toilet; she goes out alone; she can handle her finances; she plays Bingo; she watches television; she does puzzles; she crochets; and she plays cards; she goes out to breakfast; and she watches her three grandchildren play soccer . . . [She] reported to [her doctor] she is unable to exercise to lose weight, however she can do all household chores, cooking, vacuuming, hopping [*sic*], cleaning; she could climb 14 stairs in her son's house, though she needs to hold the railing . . . She reported she was independent in her personal care to her physical therapist on September 3, 2010[.]
> Dkt. No. 14-3 at 21.

The ALJ failed to justify the rejection of Ms. Furtado's testimony with particular explanations of "why reported daily activity limitations . . . are not reasonably consistent with the . . . other evidence." SSR 95-5P; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). The justification for a credibility finding must be "sufficiently specific" to show on appeal that the rejection was not arbitrary. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). An ALJ must therefore provide "specific, clear and convincing reasons" to reject subjective testimony about symptoms if sufficient medical evidence establishes the existence of impairments that reasonably might cause those symptoms and there is no affirmative evidence the claimant is malingering. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The record lacks affirmative evidence of malingering and the ALJ found that Ms. Furtado's medical impairments could reasonably be expected to cause the symptoms described in her testimony, but then he failed to provide specific, clear, convincing reasons when he rejected her testimony. The court therefore credits Ms. Furtado's testimony. *See Benecke*, 379 F.3d at 593-94.

6

1   Although an ALJ may use a claimant's admission of a high daily activity level to discredit
2   inconsistent testimony about symptoms, he may not use the admission of a low activity level to
3   discredit the testimony that explains why the activity level is low. *Benecke*, 379 F.3d at 594; *see*
4   *also Vertigan*, 260 F.3d at 1049-50. The ALJ, at most, appears to imply Ms. Furtado's admission
5   of a low activity level somehow impeaches her related explanation of how her symptoms keep her
6   activity level low. But the ALJ did not clearly adopt this reasoning and, regardless, it would not
7   be permissible.

8   The ALJ also provided no specific and valid justification when he discredited the opinion
9   of Dr. Banerjee, Ms. Furtado's long-term treating physician. Dr. Banerjee concluded, based on
10  treating Ms. Furtado from 2006 to 2011, that she suffers from "[m]orbid obesity, . . . ,
11  [d]epression, chronic osteoarthritis, [and] fibromyalgia" and that she "may decline over time"
12  unless she loses significant weight. Dkt. No. 14-10 at 83-84. Dr. Banerjee stated that Ms. Furtado
13  is constantly in severe pain and that, even with the aid of a walker, Ms. Furtado must stop walking
14  and take rests "due to pain and shortness" of breath. *Id.* at 85. He also stated that Ms. Furtado can
15  sit still for only 5 to 15 minutes at a time, that she can stand still for only a few minutes, and that
16  she "needs to lean on something" during those few minutes. *Id.* The ALJ rejected Dr. Banerjee's
17  opinions about the severity of Ms. Furtado's symptoms because Dr. Banerjee's opinions are
18  "inconsistent with the objective findings already discussed above . . . [and] . . . inconsistent with
19  the record as a whole." Dkt. No. 14-3 at 22. An ALJ may not discredit the treating physician's
20  opinions based on an unsupportable disbelief in the claimant's corroborating testimony. *Benecke*,
21  379 F.3d at 594; *see* 20 CFR § 404.1527(c)(2). The ALJ's "objective findings already discussed
22  above"—his residual functional capacity findings—depended on an unsupportable subjective
23  disbelief in Ms. Furtado's corroborating testimony. *Supra* at 6-7. The ALJ was wrong to discredit
24  Ms. Furtado's testimony in the first place and wrong again to discredit Dr. Banerjee on the basis of
25  the first mistake. The ALJ also discredited Dr. Banerjee's opinion because he "did not provide
26  objective [medical evidence] to support [his] functional assessment[.]" Dkt. No. 14-3 at 22. But
27  this was another error—an ALJ may not require "objective" evidence before he will credit a
28  treating physician's opinion about the disabling effects that could reasonably be expected to result

United States District Court
Northern District of California

from severe fibromyalgia. *Benecke*, 379 F.3d at 594.

The ALJ committed yet another error when he credited several non-treating, non-examining physicians with more weight than Dr. Banerjee's opinion. Generally, the opinions of treating physicians receive more weight than the opinions of examining physicians, and the opinions of non-examining physicians receive less weight than examining physicians. 20 CFR § 404.1527(d); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The opinions of treating physicians receive controlling weight when those opinions are well supported and consistent with the record. *Orn*, 495 F.3d at 632. A treating physician's opinion is not entitled to controlling weight if an examining physician's opinion provides "substantial evidence" that contradicts the treating physician's diagnoses or factual findings, but even then the treating physician's opinion is "entitled to deference" over contrary opinions unless the ALJ provides "specific and legitimate reasons" to overcome that deference. 20 CFR § 404.1527(d)(2); SSR 96-2P; *Orn*, 495 F.3d at 632-33. The record does not contain an opinion from an examining physician that contradicts Dr. Banerjee's diagnoses or factual findings, and the ALJ also failed to provide specific and legitimate reasons to justify his lack of deference for the opinion Dr. Banerjee developed over the course of several years as a treating physician. The state's non-examining physicians surveyed a relatively small number of documents consistent with Dr. Banerjee's opinion and then concluded Ms. Furtado had insufficient evidence of disability, Dkt. No. 14-10 at 79-82, 88-89; their opinions do not rise to the level of substantial contradictory evidence provided by examining physicians, and the ALJ was wrong to credit their opinions above Dr. Banerjee's opinion.

The ALJ rejected both Ms. Furtado's testimony and Dr. Banerjee's opinion in order to find that Ms. Furtado is an active woman, perhaps capable of physical exercise, who takes care of herself and who might re-enter the work force if she so chooses. Dkt. No. 14-3 at 21. But Ms. Furtado tells a very different story.

Ms. Furtado, at 5'4" and about 390 pounds, has always been a heavy woman. Dkt. No. 14-3 at 78. She likes to work and she worked for nearly 30 years, but she was diagnosed with severe health problems several months before she was laid off. Dkt. No. 14-3 at 95; Dkt. No. 14-9 at 149. She sought medical help for several years, but she was unable to overcome her impairments.

1    Ms. Furtado walks slowly, with severe pain and the assistance of a cane or walker, and she must
2    take a break after she moves about 50 feet. Dkt. No. 14-7 at 20; Dkt. No. 14-10 at 84. She often
3    requires the assistance of others in order to make it to the restroom on time. Dkt. No. 14-7 at 21,
4    23. She occasionally drives, but only for a short while and with frequent breaks. Dkt. No. 14-3 at
5    91-92. She "hardly" shops, but occasionally she shops for 30 to 60 minutes with the assistance of
6    her husband or her son as well as either a cane or a motorized scooter. Dkt. No. 14-7 at 23-24, 27.
7    She is able to cook three simple meals per week, but she is unable to cook the majority of her own
8    daily meals. Dkt. No. 14-7 at 24. She receives daily assistance with laundry, cooking and
9    cleaning, and she receives assistance when she goes on errands. Dkt. No. 14-7 at 23. She helps
10   with laundry, but she requires someone else to actually carry the laundry. Dkt. No. 14-7 at 24.
11   She watches TV daily, but she sits in a recliner with her legs elevated to reduce swelling and pain
12   in her knees. Dkt. No. 14-7 at 20, 26. She likes to watch her grandchildrens' soccer games about
13   once per week, but sometimes she is unable to attend. Dkt. No. 14-7 at 26-27. She enjoys
14   occasionally playing bingo, but often she is unable to attend or she must leave early. Dkt. No. 14-
15   9 at 84, 87, 89, 129; Dkt. No. 14-7 at 26. She is unable to sit at a computer without experiencing
16   severe pain. Dkt. No. 14-3 at 89; Dkt. No. 14-10 at 84-85. Likewise, she experienced severe pain
17   when she sat and testified to the ALJ. Dkt. No. 14-3 at 89.

18   This rejected evidence, when properly credited, required the ALJ to award disability benefits to Ms. Furtado at the fifth step of his analysis. The ALJ's conclusion that Ms. Furtado has the functional capacity to return to her past job cannot be justified by substantial evidence on this record. The ALJ's alternative conclusion that Ms. Furtado has the functional capacity to perform any other job also cannot be justified by substantial evidence on this record. As the ALJ noted, the functional limitations asserted by Dr. Banerjee "preclude the claimant from working at the level of substantial gainful activity." Dkt. No. 14-3 at 22. The ALJ was therefore required to award Ms. Furtado disability benefits.

## CONCLUSION

Ms. Furtado was disabled within the meaning of the Social Security Act's Title II prior to her date last insured: December 31, 2009. The ALJ committed a series of legal errors when he

reached a contrary conclusion, and a contrary conclusion is not supported by substantial evidence. The court, through a subsequent judgment, shall remand the case for an immediate award of disability benefits consistent with this order.

**IT IS SO ORDERED.**

Dated:  9/30/15

_____
HOWARD R. LLOYD
United States Magistrate Judge